TERANCE BISHOP McGUFFEY v. THE STATE.

No. 14578. Delivered January 27, 1932.

The opinion states the case.

*Wallace Hughston* and *H. H. Neilson,* both of McKinney, for appellant.

*W. C. Dowdy,* County Attorney, and *Leon O. Moses, Assistant* County Attorney, both of McKinney, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Rape by fraud is the offense; the punishment assessed at ten years in the penitentiary.

There are no bills of exception in this record. The case was submitted to the jury under the law of rape by force. The appellant contends that the evidence is insufficient to support the verdict.

The issue submitted to the jury under the charge of the court was that if the jury believed from the evidence beyond a reasonable doubt that in the County of Collin and State of Texas on or about the 3rd day of August, 1930, the defendant, Terance Bishop McGuffey, did then and there unlawfully make an assault in and upon Bertha Wicker, a woman, that he did then and there without the consent of the said Bertha Wicker administer to her by the use of a handkerchief or cloth some substance which produced a stupor or unconsciousness that prevented resistance on her part at the time, and that while under the influence of said substance and unconscious the said defendant then and there had carnal knowledge of her, the said Bertha Wicker, then you are instructed that the defendant would be guilty of rape by fraud, etc.

The testimony of the complaining witness was in brief as follows: That she was between twenty and twenty-two years of age and on the 3rd day of August at the time of the alleged offense and she lived about three miles from Pike; that she was acquainted with the appellant, McGuffey; that on August 3, 1930, she had gone to church at Pike; that it was night when she went there and she went with her father and mother; that after the services were over she had a talk with Clay Parker and said Parker asked her for a date; that they went to the car and started home; that her sister and Clay Parker and a boy friend by the name of Aubry Mulder went to the car; that the four of them got into the car and she and Aubry Mulder got in the front seat and her sister and Clay Parker got in the rumble seat and they started home; that after they had turned the car around, the appellant got in the car; that up to

the time he got in the car she had not noticed him around about the car. When he got in the car he shoved her over in the center of the seat by the side of the boy named Mulder who was driving at the time; that when he pushed her over she asked him what he meant by getting in the car and told him he had to behave himself if he rode with her and that he had no respect for her and to behave. She then testified that the appellant got a handkerchief or a cloth out of his pocket and she could smell something on the cloth or handkerchief but didn't know what it was; that he rubbed the cloth over her face and she would push his hand away and that he did this three times and put it about her mouth and nose; that she breathed the stuff on the handkerchief and it caused her to go out of her head and she did not have any sense and became unconscious and she didn't know what else then happened in the car. The next time she knew of what happened was when they got to the gate leading to her house and she was at that time out of the car; that the house she lived in does not set right on the road but sits back about a hundred yards from the road. She testified that the handkerchief the appellant put over her was dry; she could tell it was dry and was sure of it; she was not mistaken, the handkerchief was not damp. She testified further that when he put the handkerchief up to her face she would reach up with her hand and remove it from her face as quickly as she could; that the appellant would then hold her head and put it back to her face again and she would again reach up and take it away. She said she couldn't tell just how the stuff on the handkerchief smelt because it was the first time she had smelt anything like it; it did not stink and did not have a pleasant odor but she couldn't tell just how it did smell and it did not get up into her eyes.

While the complaining witness was on the witness stand, the defendant had her show in what manner the appellant put the handkerchief over her face and to show what length of time he kept it there. The witness, T. W. Franklin, testified for the defendant that he was a deputy sheriff; that he was present when Miss Bertha Wicker, the complaining witness, was testifying and observed her testimony when she was being interrogated as to the defendant rubbing her face with a handkerchief; that he watched and made an effort to determine how long a period of time she estimated the defendant rubbed her face with the cloth or handkerchief; that he had a watch for that purpose and the first time was about three seconds as near as he could get it, and the second time was about four seconds. Independent of the watch, his judgment of the length of time would be about four or five seconds.

Estelle Wicker, sister of the complaining witness, testified as to what occurred in the car while they were driving along, substantially as follows: That she saw the appellant after they had started off on the highway; when she first saw him they had gotten a piece away from Pike;

that he was in the car when she first saw him but he did not get in the car at the same time the balance of them got in; she didn't know when he got in; she stated that when she saw him in the car she asked Clay Parker why he was in there; that after they got nearly to the corner she saw her sister's foot, over the door on the right side; she couldn't see anything else but just saw her foot; she never said anything then because she was scared; that later she said something when she saw the appellant raise her sister up; that she then told them she was going to tell mother and dad; that at that time the appellant was under the steering wheel and went to driving the car; that the car stopped just below the grove gate and the appellant jumped off before they got to the gate and before he got off he said he had better get off because he was afraid the old man might not like it with three boys going home with us. She testified that something happened to the car when they got close to the gate, that is, the boys said something was the matter with it; she got out and opened the door for her sister to get out; that her sister did not want to get out and she told her to get out and she finally did so; she didn't know how her sister acted but she thought she was crazy; she didn't try to talk to her and did not say anything to her only when she opened the door and told her she ought to be ashamed and she just laughed at her; that was before she got out of the car; that she opened the gate and Mulden and her sister went on through the gate and walked home; that when they got to their house her sister acted like she was scared about something and acted like she didn't want anyone around her or near her. On cross-examination she testified that when she saw her sister's foot on the door she didn't know what had happened but had a pretty good idea of what was happening; that after they had got into their house they went to their room and to bed and her sister pulled off her own clothes and that she didn't say anything to her until after they had gotten in bed, and then she asked her what did she mean; that she didn't have any respect for her parents or anything; that her sister did not say anything, she acted like she didn't want to talk to her and that was all she said to her.

The appellant in a statement to the county attorney at the time he was arrested admitted that he had had intercourse with the complaining witness but said that it was freely and voluntarily entered into on her part; that the act took place on the front seat of a Ford coupe automobile with three persons on the front seat; that one of them was driving and the others were himself and the prosecutrix and that the prosecutrix hung one leg over the door of the automobile and put the other under the steering wheel; that he engaged in an act of intercourse with her while he was on his knees; that it was done with her free consent and that he administered at no time any drugs or medicine to her. He also testified substantially to the same facts on the trial of the case.

The witness, Aubry Mulden, who was driving the car at the time of

the alleged offense, testified substantially as the appellant did as to what occurred and how it occurred in the car.

There was no evidence that any of the persons in the car discovered any odor and there was no testimony that there was any powdered or powdery substance on either the face, hands, or clothing of the prosecuting witness.

The testimony of Dr. W. R. Mathers, a witness for the state, as to the particular issue in question, is substantially as follows:

"I do not know of any dry substance such as you can put on a handkerchief and rub over the face for three seconds and then remove it for a minute or two and then put it up and rub it for three or five seconds and produce anesthesia. I do not think medical science teaches of any such anesthetic. In my forty-one years of the practice of medicine having had occasion to make investigations and research of anesthetics, I would say I do not think there is such a drug that has been discovered according to the best medical opinion. I do not think that a man could reach in his hip pocket and pull out an ordinary man's handkerchief in an automobile traveling forty miles an hour and rub it over and around on a woman's face for three to five seconds and remove it for one or two minutes and do so a third time and produce anesthesia—I do not think that is humanely possible."

To the same effect is the testimony of the six other doctors who testified either for the state or the defendant on that issue.

The attorneys for the state in their brief call particular attention to the following testimony of Dr. Wysong in regard to the use of cocaine: "Cocaine in a powdered form might produce a state of unconsciousness when taken in sufficient quantities, but in order to produce that condition, this powdered cocaine must be placed up in the nose and then sniffed way back so as to come in contact with the membrane of the nose." He also testified substantially as the other doctors that it could not have occurred as the complaining witness testified.

A careful review of all the evidence in the case leads us to believe that the evidence is not sufficient to support the conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.